IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION


UNITED STATES OF AMERICA        :    CASE NO.
                                :
      v.                      :
                                :
DEREK EUGENE SPRIGGS           :    1:12-CR-00300-1


TRANSCRIPT OF PROCEEDINGS
SENTENCING


BEFORE:        HON. SYLVIA H. RAMBO

DATE:          December 9, 2013
                    10:00 a.m.

PLACE:        Courtroom No. 3, 8th Floor
                    Federal Building
                    Harrisburg, Pennsylvania


APPEARANCES:

MEREDITH A. TAYLOR, ESQUIRE
Assistant United States Attorney
    For the United States

HEIDI R. FREESE, ESQUIRE
    For the Defendant


CRYSTAL BARD, U.S. PROBATION OFFICER

_____


WENDY C. YINGER, RMR, CRR
Federal Official Court Reporter
P.O. Box 983
Harrisburg, PA  17108

THE COURT: Ms. Taylor.

MS. TAYLOR: Your Honor, this is the case of United States of America versus Derek Eugene Spriggs, docketed at 1:12-CR-300. Mr. Spriggs is present represented by Ms. Freese. This is the time and date set for a sentencing hearing in Mr. Spriggs' case. He was convicted, as the Court will recall, after a jury trial in April of this year of Counts 1 through 3 of the indictment and acquitted of Count 4.

THE COURT: Ms. Freese, I am aware of your legal argument concerning the 360 to life. I don't accept that argument, but I will depart downward. And the Government also agrees with that. So you can guide your argument in accordance with what I have just told you.

MS. FREESE: Okay. Thank you, Your Honor.

THE COURT: Go ahead.

MS. FREESE: Your Honor, yes. The additional argument set forth in my brief asks this Court to consider a significant downward variance in this case. Obviously, we don't agree with some of the facts set forth in the pre-sentence report by virtue of the fact that my client exercised his constitutional right to a trial.

So with respect to the drug trafficking facts, I'm simply going to set those aside since the Court had the benefit of hearing the testimony at trial. In my sentencing memorandum, and I think the pre-sentence report addendum, as

well as the Government's memorandum generally seemed to agree that some type of sentence below the guidelines of 360 months to life is appropriate in this case.

I am asking Your Honor to consider, despite the Court's finding with respect to what the guidelines actually are, to consider a sentence, a substantial downward variance in this case, actually one of roughly half of the guidelines. We are asking Your Honor to consider a sentence in the 15-year range, and we believe that pursuant to the factors set forth in 3553(a), that a sentence within that range is sufficient but not greater than necessary based on the following:

My client is 27 years old. He is born and raised in Harrisburg. And as the Court can see from the pre-sentence report, he does have 11 criminal history points -- subtotal of 11 criminal history points, I believe, plus 2 because of the time this offense occurred. The predicate offenses, Your Honor, which make him a career offender and thus greatly enhance his guideline range, are two predicates which occurred when he was 19 and 21 years of age.

And I would ask Your Honor to consider his youth at the time of those predicate offenses and to consider his relative youth today at the age of 27 years. My client has always accepted responsibility for his possession of a firearm on the day in question and recognizing that he was not lawfully able to possess that firearm on that day, Your Honor. And I

would expect him to address those facts as well with the Court.

As the Court, I'm sure, recalls, that was never a contested fact before the jury. The contested facts always were with respect to whether this firearm was possessed in furtherance of drug trafficking. So, Your Honor, we would ask you to consider some of those facts. We would also ask Your Honor to consider, which I think is significant in this case, Mr. Spriggs, his dad, who is present in the courtroom today, and is going to speak on my client's behalf as well, struggled in his life when my client was a young child and was a crack addict himself, was in and out of prison.

And as a result, my client's mother worked twice as hard to try to provide for the family. My client does not, you know, certainly blame his poor decisions as an adult at all on his parents. But in the two of us trying to figure out how he ended up here before Your Honor looking at potentially a life sentence at the age of 27, that was something we spent a great deal of time talking about.

My client is currently in Camp Hill, the State Prison at Camp Hill. And that is on a parole violation. There is no board action yet on the state detainer. So that is just sort of another issue out there. And I would suspect, at least if the most recent cases provide a trend, that very shortly after sentencing in this matter, Your Honor, that the state board of parole will act and will impose some type of board action.

We all know that sentence will be served consecutive to this sentence. And we ask Your Honor to consider that factor as an additional matter for the need for the sentence imposed, considering that the state parole detainer will obviously provide an additional period of incarceration for Mr. Spriggs.

THE COURT: So is this involving Dauphin County docket numbers 3242-2008 and 2487-2012 or are these other offenses for which the detainer --

MS. FREESE: I believe it is only relative to 3242 of 2008, Your Honor. It is only relative to paragraph 30 that he was returned to state custody. His tail on that sentence actually was eight years. Therefore, I haven't done the exact calculation, but I believe that his maximum on the state parole violation will be several years out.

Well, actually, I'm sorry, it's right there. October 24th, 2018, is his maximum. Now we don't know what the Pennsylvania Board of Probation and Parole will do. Based upon what I've seen in similar circumstances, I believe he will get at least 18 months, and potentially could get more. So he's looking at a substantial penalty there, which I think is quite significant, because if he's 27 now, you know, we're looking at the sentence Your Honor imposes will leave my client incarcerated likely into his 50's.

And that's significant. And that's even with a

significant downward variance from the guidelines as they are now. My client is not married. He doesn't have any children of his own. He is -- was/is involved in a romantic relationship. And he helped his girlfriend raise her two small children. And we just ask Your Honor to take all those facts into consideration. With that being said, I know that my client's dad --

THE COURT: You may bring him up.

MS. FREESE: Thank you. Mr. Smith.

THE COURT: Do you want him under oath?

MS. TAYLOR: No, Your Honor.

MS. FREESE: Is it sufficient if he stands here?

THE COURT: Just have him identify his name.

MS. FREESE: Sir, please state your name.

MR. SMITH: Derek Eugene Smith.

MS. FREESE: Mr. Smith, what is your relationship to Derek Spriggs?

MR. SMITH: I'm his father.

MS. FREESE: What is it that you'd like to share with the Court today?

MR. SMITH: I just basically would like to speak on his behalf because I wasn't a good father when he was coming up. I feel as though a lot of what he did was because of what I was doing. I was in the streets when he was a baby coming up. I was in and out of jails. I had a reputation I held on

the streets. That's basically what he heard of his dad, people saying, oh, you Pete Smith -- they call me Pete Smith -- you Pete Smith son, how your dad, and that?

I think he would have took that as, I want to be like that man, that man my dad is, my dad was. He followed my footsteps. I ain't been in the federal system, but I've been in the state system a long time. I've been out for a while. I've been out like four years. This is the first time I've been out this long. I know he's a good kid. He just made wrong decisions.

He knew what he was doing. I'm not making no excuses for him. But I know that I wasn't the role model I should have been for my son. And I'm hoping now that he see I got out, I finally out of the streets, doing good, working, got married, I'm doing right. I am just hoping he see that, whenever you do let him home, that he can do the same thing, that he's not stuck to be in the system for the rest of his life, and there is hope. It took me 50 years -- 47 years to finally get it right. I'm hoping it don't take him that long.

THE COURT: Do you wish to question?

MS. TAYLOR: No, Your Honor.

THE COURT: I have no questions.

MS. FREESE: Thank you.

THE COURT: Do you wish to speak on your own behalf?

THE DEFENDANT: Yes.

THE COURT: Go ahead.

THE DEFENDANT: Your Honor, I'm not here to make any excuses for myself. I know I was wrong in carrying a firearm. I always admitted that, you know. I'm just saying, what I'd like to do is throw myself at the mercy of the Court. I'm young. I have no kids. I know I have to do some time. I know I have to be punished for my actions. I just ask that I still have some youth as to where I could start a family, become somebody productive, and, you know, basically before my parents are dead and gone, show them I can be a better man than what I am now. Like I said, I have no excuse for what I done. I just know that I learned from that. And I just, you know, I just ask for your mercy on this situation here. That's all I have to say.

THE COURT: Ms. Taylor.

MS. TAYLOR: Your Honor, as we indicated in our sentencing memorandum, we certainly don't object to a departure under the facts of this case as well as given Mr. Spriggs' history. Of course, with his history, he is a career offender. The advisory guidelines are 360 to life. I don't believe Ms. Freese's arguments are unreasonable, and I understand the Court is considering departing.

We'd ask the Court to consider a sentence of approximately 240 months, which would be a 10-year departure.

THE COURT: Let me see Crystal.

(Sidebar with the probation officer off the record.)

THE COURT: We'll enter this order.

AND NOW, this 9th day of December, the year 2013, the Defendant appearing in court for purposes of sentencing, pursuant to the Sentencing Reform Act of 1984, and having considered the factors set forth in 18 U.S.C. Section 3553(a), it is the judgment of the Court that the Defendant, Derek Eugene Spriggs, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 240 months.

This term consists of a term of 120 months on Count 1, 60 months on Count 2, and 60 months on Count 3, all counts to run consecutively. Additionally, said sentence shall be served consecutive to Dauphin County Docket No. 3242-2008.

The Court finds that the Defendant has the ability to pay a fine, and it is ordered that the Defendant shall pay to the Clerk, U.S. District Court, the sum of $2300.00 consisting of special assessments of $100.00 on each count, for a total of $300.00, due immediately, and a fine of $2000.00 on Count 2.

During the term of imprisonment, the fine is payable every three months in an amount after a telephone allowance equal to 50 percent of the funds deposited into the inmate's trust fund account. In the event the fine is not paid in full prior to the commencement of supervised release, the Defendant shall, as a condition of supervised release, satisfy the amount due in monthly installments of no less than $35.00, to commence

30 days after release from confinement.

Upon release from imprisonment, the Defendant shall be placed on supervised release for a term of five years. This term consists of terms of three years on Counts 1 and 3 and five years on Count 2, to be served concurrently. Within 72 hours of release from the custody of the Bureau of Prisons, the Defendant shall report in person to the probation office in the district to which the Defendant is released.

While on supervised release, the Defendant shall not commit any federal, state, or local crimes, and shall not possess a dangerous weapon. The Defendant shall comply with the standard conditions that have been adopted by this Court and with the following additional conditions:

One, the Defendant shall submit to one drug test within 15 days of commencing supervision and at least two periodic drug tests thereafter for use of a controlled substance. Two, Defendant shall cooperate in the collection of a DNA sample as directed by the probation officer unless a sample was collected during imprisonment. Three, Defendant shall undergo a substance abuse evaluation and, if recommended, the Defendant shall satisfactorily complete a program of outpatient or inpatient substance abuse treatment. Four, Defendant shall notify the Court of any material change in the Defendant's economic circumstances that might affect the Defendant's ability to pay the fine or special assessment.

Five, the Defendant shall not incur new credit charges or open additional lines of credit without approval of the probation officer unless the Defendant is in compliance with the installment schedule of payment of restitution, fines, and special assessment.  And six, the Defendant shall provide the probation officer with access to any requested financial information.

The following statement of reasons is placed on the record for the sentence that has been imposed:  The Court adopts the pre-sentence investigation report without change. The mandatory minimum sentence has been imposed.  The fine is below the guideline range because of the Defendant's inability to pay.

The Court imposed a sentence outside the advisory sentencing guideline system for the following reasons:  The sentence is below the advisory guideline range.  The Court has considered the nature and circumstances of the offense, the history and characteristics of the Defendant.  Pursuant to 18 U.S.C. Section 3553(a)(1) is to reflect the seriousness of the offense, to afford adequate deterrence of criminal conduct, and to protect the public from further crimes.  The Court also realizes that a sentence of 20 years would be sufficient but not greater than necessary to address the factors set forth in 18 U.S.C. Section 3553(a).

In making these findings, the Court has considered

the youth of the Defendant in some of his offenses. It will not accept the fact that he did it to emulate his father. I do not accept that as a basis for a departure. The Court realizes that the Defendant is a career offender. He was on escape status when he committed the offenses for which he stands for sentencing today. A lengthy sentence is necessary based on the nature and seriousness of the offense and history and characteristics of the Defendant. However, the guideline range applicable in this case is greater than necessary to achieve the sentencing objectives.

Now, sir, you have a right to appeal your sentence to the United States Court of Appeals. If you are unable to pay the costs of an appeal, you may apply for leave to appeal in forma pauperis. And if you so request, the Clerk of Court will prepare and file a notice of appeal on your behalf. You have 14 days from this day in which to file a notice of appeal. Is there a recommendation for place of imprisonment?

MS. FREESE: Just a location close to Dauphin County, Pennsylvania.

THE COURT: Put that in there, Mark. Is there anything else that needs attention?

MS. TAYLOR: Not from the Government, Your Honor.

MS. FREESE: Nothing further.

THE COURT: Court's in recess.

(Proceeding adjourned at 10:20 a.m.)

**CERTIFICATION**

I, Wendy C. Yinger, Federal Official Realtime Court Reporter, in and for the United States District Court for the Middle District of Pennsylvania, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

/s/ Wendy C. Yinger
Wendy C. Yinger, RMR, CRR
U.S. Official Court Reporter
(717)440-1535